# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANI PHARMACEUTICALS, INC.                          :
                                                   :
                    *Plaintiff,*                   :
                                                   :   C.A. No. 17-cv-01097 VAC-MPT
         v.                                        :
                                                   :
METHOD PHARMACEUTICALS, LLC                        :
AND MATTHEW SCOTT TUCKER                           :
                                                   :
                    *Defendants.*                  :
                                                   :

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2)
## OR, IN THE ALTERNATIVE, TRANSFER VENUE

**BUCHANAN, INGERSOLL & ROONEY, P.C.**

Geoffrey G. Grivner (#4711)
919 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

S. Lloyd Smith
James T. Wilcox
Alexandre H. Gapihan
BUCHANAN INGERSOLL & ROONEY P.C
1737 King Street, Suite 500
Alexandria, Virginia 22314
Tel. (703) 836-6620
Fax (703) 836-2021
lloyd.smith@bipc.com
james.wilcox@bipc.com
alexandre.gapihan@bipc.com
*Attorneys for Plaintiff*

Dated: October 19, 2017

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND .............................................................................1

    A.    All Parties Have Meaningful Contact with Delaware...................................1

III. PERSONAL JURISDICTION .............................................................................2

    A.    Legal Standard ...........................................................................................2

            i.    12(b)(2) Motion ...............................................................................2

            ii.    Personal Jurisdiction ......................................................................3

    B.    The Court Has Specific Jurisdiction Over Method Under Delaware's
        Long Arm Statute ......................................................................................4

            i.    Method's Sales Activities Establish Personal Jurisdiction
                 Pursuant to 10 Del. C. § 3104(C)(1), (2), and (4)..........................4

            ii.    Method's Distribution Contract With McKesson and
                 Advertising With the Drug Databases Constitutes Purposeful
                 Availment of Delaware Law Protections.........................................7

           iii.    Method is a Pharmaceuticals Vendor to a Purchasing
                 Cooperative that Includes the State of Delaware ............................8

           iv.    Method's Conduct is Sufficient to Overcome Due Process
                 Concerns ........................................................................................9

    C.    The Corporate Fiduciary Shield Doctrine Does Not Preclude
        Mr. Tucker from Being Sued in Delaware..................................................11

IV. VENUE .............................................................................................................13

    A.    Legal Standard .........................................................................................13

    B.    Venue is Appropriate in Delaware...........................................................14

            i.    ANI's Choice of Forum in Delaware Strongly Weighs Against
                 Transfer ........................................................................................14

             ii.    ANI's Choice of Forum Should Prevail Because the Balance of
                 Convenience of the Parties is not Strongly in Favor of Method...............15

           iii.    Method has Failed to Establish that the Public Interest Factors
                 Weigh Strongly in Favor of Transfer............................................18

C.    In the Alternative, the Court Must Transfer this Lawsuit to the District of Minnesota ..........................................................................................19

      i.    The Private and Public Interest Factors Weigh in Favor of the District of Minnesota as an Alternate Venue .............................................19

V.    CONCLUSION..........................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755 (Fed. Cir. 2016) ......................... 6

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192 (D. Del. 1998) .............................. 15

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458 (D. Del.1991)............................. 4

*Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. CV 17-379-LPS, 2017 WL
    3980155 (D. Del. Sept. 11, 2017) ...................................................................... 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................................... 11

*Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, No. 01 C 6985, 2002 WL
    31427021 (N.D. Ill. Oct. 30, 2002)................................................................... 12

*Cypress Semiconductor Corp.*, 2001 WL 1617186 ................................................. 17

*FastVDO, LLC v. Paramount Pictures Corp.*, 947 F.Supp.2d 460 (D. Del. 2013) ..................... 16

*Fugate v. Boeing Co.*, No. 13-cv-152, 2013 U.S. Dist. Lexis 86698 (D. Del. June 20,
    2013) .............................................................................................. 11

*GT Solar Inc. v. Goi*, No. CIV. 08-CV-249-JL, 2009 WL 3417587 (D.N.H. Oct. 16,
    2009) .............................................................................................. 12

*Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F.Supp.2d 367 (D. Del. 2012) ....................... 17

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) ....................................... 3

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).................................................. 11

*Kabbaj v. Simpson*, No. 12-cv-1322-RGA-MPT, 2013 WL 2456108 (D. Del. June 6,
    2013) ........................................................................................... 4, 8, 9

*LaNuova D & B, S.P.A. v. Bowe Co.*, 513 A.2d 764 (Del. 1986)................................... 4

*LaVallee v. Parrot-Ice Drink Prod. of Am., Inc.*, 193 F. Supp.2d 296 (D. Mass. 2002) ............. 12

*Margulis v. Medical Parts Int'l Inc.*, 1999 WL 183648 (N.D.Ill. Mar. 25, 1999) ..................... 12

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) ....................................... 3

*Mktg. Prods. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*, 2004 WL 249581
    (Del. Super. Ct. Jan. 28, 2004)....................................................................... 11

*Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.,* 833 F.Supp. 437 (D. Del. 1993) .................................................................................................................. 11

*Motorola Inc. v. PC-Tel, Inc.,* 58 F.Supp.2d 349, (D. Del. 1999) .................................. 5

*O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312 (3d Cir. 2007) ................................. 2

*Pfizer Inc. v. Mylan Inc.,* No. CV 15-26-SLR-SRF, 2016 WL 1319700 (D. Del. Apr. 4, 2016) ...................................................................................................................... 3

*Plummer & Co. Realtors v. Crisafi,* 533 A.2d 1242 (Del. Super. Ct. 1987) ................. 11

*Power Integrations, Inc. v. BCD Semiconductor Corp.,* 547 F.Supp.2d 365 (D. Del. 2008) ......................................................................................................................... 6

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434 (3d Cir. 1987) ................... 2

*Registered Agents, Ltd. v. Registered Agent, Inc.,* 880 F. Supp. 2d 541 (D. Del. 2012) ............... 7

*Rice v. Nova Biomedical Corp.,* 38 F.3d 909 (7th Cir. 1994) ..................................... 12

*See Simms v. Thomson Reuters Tax and Accounting, Inc.,* 2011 WL 4501225, at *3 (D. Del. Sept. 28, 2011) .......................................................... 15

*Smart Audio Techs., LLC v. Apple, Inc.,* 910 F.Supp. 2d 718 (D.Del. 2012) .............. 13

*Swiger v. Allegheny Energy, Inc.,* 540 F.3d 179 (3d Cir. 2008) .................................. 5

*Thorn EMI North America, Inc. v. Micron Technology, Inc.,* 821 F.Supp. 272 (D.Del.1993) ................................................................................................. 7, 8, 9, 10

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61 (3d Cir. 1984) ......... 3

*Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446 (3d Cir.2003) ............................... 10

*Traynor v. Liu,* 495 F.Supp.2d 444 (D. Del. 2007) ....................................................... 3

*Tristrata Tech., Inc. v. Emulgen Labs., Inc.,* 537 F. Supp. 2d 635 (D. Del. 2008) ....... 4

*TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.,* 961 F. Supp. 686 (D. Del. 1997) ................... 11

*Van Dusen v. Barrack,* 376 U.S. 612 (1964) ............................................................. 13

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) ............................... 9

## I.   **INTRODUCTION**

This lawsuit concerns false advertising and related state law claims concerning the sale and distribution of Defendants Method Pharmaceuticals, LLC ("Method") and Matthew Scott Tucker's ( collectively "Method") esterified estrogens and methyltestosterone ("EEMT") drug products.  Plaintiff ANI Pharmaceuticals, Inc.'s ("ANI") Complaint alleges that by attempting to pass-off their EEMT drug product as equivalent to ANI's, Method harms ANI's sales, reputation, and accrued goodwill.  Method admits that it contracted with a Delaware company, McKesson, to distribute its EEMT nationwide.  It further admits that it listed its drugs with national drug databases, which advertise drug availability and pricing nationwide, and are the key to drug sales.  Method is also a pharmaceutical vendor for a purchasing cooperative entered into by the state of Delaware.  These activities establish personal jurisdiction in Delaware.

ANI, a Delaware Corporation, is also entitled to its choice of forum.  Method has not demonstrated any need that this strong presumption should be overcome.    Accordingly, Method's Motion should be denied.

## II.   **FACTUAL BACKGROUND**

### A.   ALL PARTIES HAVE MEANINGFUL CONTACT WITH DELAWARE

Plaintiff ANI is a Delaware corporation with a principal place of business in Baudette, Minnesota.   It develops, manufactures, and markets both branded and generic prescription pharmaceutical drug products.  ANI sells its drug products throughout the United States.

Defendant Method, through the declaration of its President and managing agent, Defendant Tucker, admits that it entered into a distribution contract with McKesson Corporation ("McKesson"), *a Delaware corporation*, that distributes pharmaceuticals at a retail sale level throughout this District, and throughout the United States. Dkt. No. 12-1, Tucker Decl. ¶ 10; See also Ex. A (Wilcox Decl.) at Ex. 1.  McKesson is the largest distributor of pharmaceutical drugs

1

and medical devices in the United States, and it ranks 5th on the Fortune 500 ranking of America's largest corporations, with revenues in excess of $190 billion.  *See* Ex. A at Ex. 1. Method admits that it has no control over where McKesson distributes its products. Dkt. No. 12-1 ¶ 10.  Method is fully aware that McKesson, the largest drug distributor in the United States, distributes drug products nationwide through Walmart and Rite Aid pharmacies.  Method understands that McKesson's nationwide distribution includes the state of Delaware, and makes no allegation that its contract with McKesson excludes its products from the Delaware market.

Method also admits that is has listed its EEMT product in the national pharmaceutical databases Medi-Span and First Databank. Dkt. No. 12-1 ¶ 11.  These databases have nationwide reach and are an essential advertising tool for drug products.  Method promotes its EEMT drug products in those databases so that Delaware pharmacists will order its EEMT drug products, and Delaware insurance companies will list its EEMT drug products in formularies for reimbursement. See Dkt. No. 1 ¶¶ 26, 27.   Method's nationwide advertising of its EEMT drug products in the drug databases along with its distribution contract with McKesson ensures that its EEMT drug products will be dispensed in Delaware and creates personal jurisdiction in Delaware over Defendants Method and Tucker.

### III.   PERSONAL JURISDICTION

**A.   LEGAL STANDARD**

  **i.   12(b)(2) Motion**

A plaintiff "need only establish a prima facie case of personal jurisdiction" when the court has not held an evidentiary hearing.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  Plaintiff need only establish that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  To meet this burden, the plaintiff can rely

on "sworn affidavits or other competent evidence," since a Fed. R. Civ. P. 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984). When reviewing a Fed. R. Civ. P. 12(b)(2) Motion, a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

### ii. <u>Personal Jurisdiction</u>

A plaintiff establishes personal jurisdiction by producing facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional. *Pfizer Inc. v. Mylan Inc.*, No. CV 15-26-SLR-SRF, 2016 WL 1319700, at *2 (D. Del. Apr. 4, 2016). The court must determine whether there is a statutory basis for jurisdiction under the forum state's long-arm statute. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The constitutional basis requires the court to determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Id.*

Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1)–(4), provides that a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 *Del. C.* § 3104. "Subsections (c)(1)-(3) are specific jurisdiction provisions, requiring a nexus between the cause of action and the conduct of the defendant as the basis for jurisdiction." *Kabbaj v. Simpson,* No. 12-cv-1322-RGA-MPT, 2013 WL 2456108, at *5 (D. Del. June 6, 2013). Subsection (c)(4) confers general jurisdiction, which requires a great number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1466 (D. Del.1991).

Delaware's long-arm statute should be "broadly construed to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B, S.P.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). This requires courts to apply the statute's provisions "liberally . . . to provide residents a means of redress against those not subject to personal service within the state." *Tristrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 639 (D. Del. 2008).

**B.    THE COURT HAS SPECIFIC JURISDICTION OVER METHOD UNDER DELAWARE'S LONG ARM STATUTE**

   **i.    Method's Sales Activities Establish Personal Jurisdiction Pursuant to 10 Del. C. § 3104(C)(1), (2), and (4)**

Method's distribution contract with McKesson and the listing of its EEMT drug product on national drug databases demonstrates clear intent to distribute its EEMT drug products throughout the United States. McKesson distributes pharmaceuticals at a retail sale level through major chains such as Walmart and Rite Aid and independent pharmacy networks throughout North America.[1] The company had revenues exceeding of $190 billion in 2017.[2] A distribution contract with a company with the reach of McKesson necessarily implies the distribution of

---

[1] McKesson Corporation is a global leader in healthcare supply chain management solutions, including retail pharmacies. The company partners with pharmaceutical manufacturers, providers, pharmacies, pharmacy benefit managers, governments and other organizations. *See* Ex. A at Ex. 1.

[2] *Id.*

Method's product in Delaware. This Court has held that national product sales qualify as business in each state for purposes of the Delaware long-arm statute. *See Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349, 355, 357 (D. Del. 1999) (denying motion to dismiss for lack of personal jurisdiction where defendant sold and advertised products nationwide and thus could expect to be sued in Delaware). Further, because McKesson is a resident of Delaware – *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) ("A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.") – Method is subject to personal jurisdiction in Delaware based on its relationship with McKesson. *See Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446, 452 (3d Cir. 2003) ("When a defendant makes a conscious choice to conduct business with the *residents of a forum state*, it has clear notice that it is subject to suit there." (emphasis added)).

Method's listing of its product on national drug databases, such as First Databank and Medi-Span, is made available to pharmacies throughout the country.[3] Medi-Span services US drug purchasers through its Master Drug Data Base, which provides comprehensive and current drug availability and pricing information used by pharmacists, pharmaceutical manufacturers, health care professionals, and payers. *See* Ex. A at Ex. 2 (Medi-Span Webpage). Medi-Span's clients include 4 of the 5 top-grossing drug retailers.[4] *Id.* First Databank also services hundreds hospitals, physician practices, payers, health plans, PBMs, employers, retail pharmacies, developers, drug manufacturers, and healthcare organizations, including many throughout Delaware. *See* Ex. A at Exs. 3 and 4 (First Databank List of Customers and brochure). According to FDB, the FDB Database is used for "electronic prescribing, pharmacy dispensing,

---

[3] See e.g., Ex. A at Exs. 2-4.

[4] Their clients also include 17 out of 20 of the top-grossing PBMs and 95% of the 20 top health insurance companies; 25 of the 27 Honor Roll hospitals and children's hospitals; and 7 of the 10 top-grossing EMRs. *See* Ex. A at Ex. 2.

drug claims processing, and drug pricing and competitive analysis" and enables "health care professionals to make more precise medication-related decisions to improve patient safety and healthcare outcomes." Ex. A at Exs. 3

Method is fully aware that its advertising of its EEMT drug products with the drug databases will cause it to be promoted as linked to ANI's EEMT drug products to health care professionals and pharmacies throughout Delaware. "Finally, it must be noted that a nonresident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F.Supp.2d 365, 373 (D. Del. 2008). Method has provided no such evidence.

Method claims that "even if these 'listings' could satisfy Delaware's long-arm statute ... jurisdiction still cannot be premised on this basis because the alleged 'listings' occurred post-filing ..." Dkt. No. 12, Mot. to Dis., Fn 17 at 11. Federal Courts, have rejected Method's contention "that a rigid past/future dividing line governs the minimum-contacts standard" for purposes of personal jurisdiction. *Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. CV 17-379-LPS, 2017 WL 3980155, at *9 (D. Del. Sept. 11, 2017) (citing *Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 762 (Fed. Cir. 2016) ("Mylan d[id] not show that a State is forbidden to exercise its judicial power to prevent a defendant's planned future conduct in the State, but must wait until the conduct occurs."), cert. denied sub nom. *Mylan Pharm. v. Acorda Therapeutics,* 137 S. Ct. 625, 196 L. Ed. 2d 580 (2017). Instead, the Federal Circuit, in *Acorda*, determined that "[a]s long as the connection to the planned acts is close enough, the subject of

such actions readily fits the terms of the minimum-contacts standard—conduct purposefully directed at the State that gives rise and is related to the suit." *Acorda*, 817 F.3d at 762.

The Federal Circuit further stated:

> "Mylan seeks approval to sell its generic drugs throughout the United States, including in Delaware, and it is undisputed that Mylan plans to direct sales of its generic drugs into Delaware. The complaints in these cases allege that Mylan's generic drugs would be distributed and sold in Delaware and that Mylan intends to commercially manufacture, use, and sell the generics upon receiving FDA approval. As Mylan admits, it develops drugs for the entire U.S. market and does some business in every State, either directly or indirectly. . . . And even if Mylan does not sell its drugs directly into Delaware, it has a network of independent wholesalers and distributors with which it contracts to market the drugs in Delaware. Such directing of sales into Delaware is sufficient for minimum contacts."

*Acorda*, 817 F.3d at 763

Method's listing of its EMMT drug products in national pharmaceutical drug databases and contracting with a distributor that specializes in the distribution of drug products throughout the United States is directly analogous to Mylan's conduct. Method is choosing to conduct business in every State, including Delaware. "A State's exercise of jurisdiction over a defendant planning such conduct can hardly come as a surprise to the defendant and does nothing to offend 'traditional notions of fair play and substantial justice.'" *Acorda*, 817 F.3d at 762 (citation omitted).

ii.    **Method's Distribution Contract With McKesson and Advertising With the Drug Databases Constitutes Purposeful Availment of Delaware Law Protections**

Method argues that ANI did not establish that it "transacted" business in Delaware or "contracted to supply services or things" in Delaware. Dkt. No. 12, Mot. to Dis. at 8. In support, Method cites *Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F.Supp.2d 541, 547 (D. Del. 2012) (Robinson, J.) (Quoting *Thorn EMI North America, Inc. v. Micron Technology, Inc.*, 821 F.Supp. 272, 274 (D.Del.1993)). In *Registered Agents*, defendant sent two letters that "were

isolated solicitations, mailed from outside of Delaware, that did not result in any business either in Delaware or Nevada." *Id.*

Method's conduct is hardly comparable to the "solicitations" contemplated by this Court in *Registered Agent.* Rather, Method's listing in national drug databases and contract with McKesson, a nation-wide distributor, constitute "part of a general business plan, directed by [Defendants], to solicit business in Delaware and deliver products to customers in Delaware." *Thorn EMI N. Am., Inc.* 821 F.Supp. at 274. The solicitation of business in Delaware, in conjunction with the planned distribution of products in the State demonstrates Method's purposeful availment of the protections of Delaware law. *Id.*

**iii.    Method is a Pharmaceuticals Vendor to a Purchasing Cooperative that Includes the State of Delaware**

This Court may also exercise personal jurisdiction over Method because it contracts to supply pharmaceutical products in the state of Delaware. *See* 10 *Del. C.* § 3104(c)(3). This is contrary to Method's argument that ANI has not established that Method has "transacted" business in Delaware or "contracted to supply services or things" in Delaware. Rather, the state of Delaware has contracted to be part of the Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP") purchasing collective for pharmaceutical products. *See* Ex. A at Ex. 7. Delaware has become a party to this contract pursuant to Delaware Code Title 29 § 6933 & § 6987. *Id.* As shown in Addendum #4 to Delaware's MMCAP contract, published by the Department of Health and Social Services for Delaware, Method has contracted with the MMCAP to be a pharmaceuticals vendor, and therefore is contracting to supply pharmaceutical products in the state of Delaware. *See* Ex. A at Ex. 8. Accordingly there is a direct nexus exists between Method's agreement to be a vendor of pharmaceutical products to the state of Delaware and ANI's claims against Method for false advertising of its EEMT pharmaceutical products in

the state of Delaware, and Method is subject to this Court's jurisdiction. *See Kabbaj*, No. 12-cv-1322-RGA-MPT, 2013 WL 2456108, at *5 (D. Del. June 6, 2013).

iv.    **Method's Conduct is Sufficient to Overcome Due Process Concerns**

The relevant factors in deciding whether the relationship between defendant and the forum is such that it is fair or reasonable to require the party to defend the particular suit which is brought there include:   the burden on the defendant; the state's interest in adjudicating the dispute; the plaintiff's interest in securing convenient and effective relief, insofar as that interest is not adequately protected by the plaintiff's power to choose the forum; and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).   Applying the facts to these factors demonstrates that this Court may constitutionally assert jurisdiction over Method.

The state of Delaware has a compelling interest in deciding the dispute because ANI is a Delaware corporation and the suit involves drug products that are distributed throughout the state.   Method's connections with this state are such that it should have reasonably anticipated being sued here.   Method "did not merely place products in the stream of commerce, which [they] could have foreseen would find their way to Delaware[.]" *Thorn EMI N. Am., Inc.* 821 F.Supp. at 276.   Rather, Method marketed its EEMT drug products to Delaware pharmacists and insurers who through the drug databases, and made its product available to those pharmacists and insurers through a distribution contract with McKesson,  a Delaware company. See Ex. A at Ex. 1.   Method has further contacts with this state as a pharmaceuticals vendor for a purchasing cooperative in which Delaware is a member. See Ex. A at Exs. 7, 8.

Method relies on *Kabbaj* for the notion that "[t]he mere ability to access the postings from one's computer does not confer personal jurisdiction, even though that access is available in Delaware." *Kabbaj*, 2013 WL 2456108 at *7.   The Court in *Kabbaj* referred specifically to

9

"the posting of remarks, comments, opinions, statements or other electronic messages on the Internet," without specifically directing them to Delaware, as the basis for denying personal jurisdiction. *Id.* Here, Method has listed its drug products on drug databases that specifically cater to pharmacies throughout the country. In doing so, Method was fully aware –and sought to ensure – that its listings would promote its EEMT drug products to pharmacies in Delaware as available for purchase.

Method also cites *inno360, Inc. v. Zakta,* LLC, 50 F. Supp. 3d 587 (D. Del. 2014) for the proposition that "[c]ourts within the Third Circuit have traditionally required something more from defendants other than knowledge that their website could be viewed . . . before considering whether specific jurisdiction is proper." Here, Method purposefully listed its product on drug databases <u>because of</u> these websites' reach throughout the country. Unlike the Defendant in *inno360*, Method's use of these national drug databases is made with the specific purpose of reaching pharmacies throughout the United States, including Delaware pharmacies.

Method's conduct meets the 3rd Circuit's "purposeful availment" standard for specific jurisdiction. *See Toys "R" Us, Inc.*, 318 F.3d at 452. Method should reasonably anticipate or foresee being haled into court in Delaware as a result of their purposeful availment of the protections of Delaware law. *See Thorn EMI N. Am., Inc.*, 821 F.Supp. at 274. The purpose of Method's distribution contract with McKesson is to make its EEMT drug products commercially available in every state. Placing a product in the stream of commerce with the understanding that it will end up in Delaware is sufficient to meet the minimum contact requirements. Accordingly Method has more than the "minimum contacts" with Delaware necessary to be haled into court in this forum consistent with "fair play and substantial justice." *Burger King*

*Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)(*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945)).[5]

## C.    THE CORPORATE FIDUCIARY SHIELD DOCTRINE DOES NOT PRECLUDE MR. TUCKER FROM BEING SUED IN DELAWARE

The limited purpose of the fiduciary shield doctrine is to "prohibit acts performed by an individual in the individual's capacity as a corporate employee from serving as the basis for personal jurisdiction over that individual." *TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.,* 961 F. Supp. 686, 690 (D. Del. 1997).  The idea behind the doctrine is that it would be unfair to subject an employee to personal jurisdiction for acts within the scope of their employment. *Plummer & Co. Realtors v. Crisafi,* 533 A.2d 1242, 1246–47 (Del. Super. Ct. 1987).  It is an equitable doctrine that should be applied with a sound exercise of discretion.[6]  *Id.*

A number of Federal Courts have held that, because the fiduciary shield doctrine is grounded in fairness, it does not apply if the individual was also acting to serve his personal interests, or when the individual has full discretion over his actions, was the alter-ego of the corporation, or had an identity of interest with the corporation itself (i.e., the corporation and the corporation's president).  *See, e.g. Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir.

---

[5] If this Court decides, for whatever reason, that the currently available evidence is insufficient to show jurisdiction, it should then permit ANI to undertake limited jurisdictional discovery from Method. *See Fugate v. Boeing Co.,* No. 13-cv-152, 2013 U.S. Dist. Lexis 86698, at *18-19 (D. Del. June 20, 2013)( "Generally, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") *citing Toys "R" Us, Inc.,*  318 F.3d at 456 (internal citations omitted).

[6] As a threshold matter, it is questionable whether the fiduciary shield doctrine is recognized by Delaware law, even if Tucker were able to fit within its narrow definition.  *Compare Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.,* 833 F. Supp. 437, 440–43 (D. Del. 1993) (determining that the Delaware Supreme Court likely would not recognize fiduciary shield doctrine as an absolute bar to personal jurisdiction)  *with Mktg. Prods. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.,* 2004 WL 249581, at *3 (Del. Super. Ct. Jan. 28, 2004) (applying the fiduciary shield doctrine as a bar to personal jurisdiction over a corporate employee).

1994) ( "The shield is withdrawn if the agent was acting also or instead on his own behalf"); *GT Solar Inc. v. Goi,* No. CIV. 08-CV-249-JL, 2009 WL 3417587, at *7 (D.N.H. Oct. 16, 2009); *LaVallee v. Parrot-Ice Drink Prod. of Am., Inc.,* 193 F. Supp. 2d 296, 301 (D. Mass. 2002).

As is in this case with Defendant Tucker, courts have found exceptions to the fiduciary shield doctrine, for example, where a company is the alter ego of a defendant or where the defendant is a high-ranking company officer or shareholder with decision-making authority and a direct financial stake in the company. *See Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.,* No. 01 C 6985, 2002 WL 31427021, at *3 (N.D. Ill. Oct. 30, 2002) (collecting cases); *See also Margulis v. Medical Parts Int'l Inc.,* 1999 WL 183648, at *5 (N.D.Ill. Mar. 25, 1999) ("the fiduciary shield defense is unavailable to high-ranking company officers and shareholders" because these individuals "have a direct financial stake in the company's health and therefore can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit.") (citations omitted). If the corporation "were a shell utilized by an individual defendant for his own benefit, the balance of fairness might be tipped and jurisdiction over the individual might lie." *Plummer,* 533 A.2d 1242, 1246–47 (Del. Super. Ct. 1987).

Mr. Tucker and Method are one and the same. As he notes in his Affidavit, Mr. Tucker is the Founder and President of Method, and he does not indicate that anyone else has any ownership interest in the company *See* Dkt. No. 12-1. As such, Mr. Tucker has a clear personal financial interest in the misconduct alleged in the Complaint. The fiduciary shield doctrine does not apply to Mr. Tucker because he was not merely acting at the direction of Method. As Method's owner and President, his actions were for his own individual pecuniary interest. He acted at his own behest, not that of a supervisor, which is the type of situation in which the fiduciary shield doctrine is typically invoked. As Method's owner and President, Mr. Tucker

12

directly designed, facilitated, and negotiated a distribution contract with McKesson. Further, he directed the listing of Method's EEMT product on drug databases.

Absent the fiduciary shield, jurisdiction over Mr. Tucker is proper for the reasons discussed with respect to Method.

## IV.   VENUE

This lawsuit was properly brought in the District of Delaware pursuant to 28 U.S.C. § 1391(b)(2). This lawsuit should be allowed to proceed in ANI's chosen forum, the District of Delaware, because Method has not met its burden to show that transfer is warranted. *See Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir.1995) ("[T]he plaintiff's choice of venue should not be lightly disturbed.").

### A.   LEGAL STANDARD

Under 28 U.S.C. § 1404(a), Method's mere desire to transfer this case to what it considers a more convenient court does not override the ANI's chosen venue, which Method does not allege is improper. *See Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964) (noting that Section 1404(a) "was not designed to narrow the plaintiff's venue privilege"). To prevail, the movant must demonstrate that the balance of convenience strongly favors transfer. *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F.Supp. 2d 718, 725-26 (D.Del. 2012). Method has not so demonstrated.

To determine whether transfer to a different forum would best serve the interests of justice and convenience, courts look to the various private and public interests protected by § 1404 rather than to any "definitive formula." *Jumara*, 55 F.3d at 879. These private interests may include:

> "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and

> financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Smart Audio Techs., LLC*, 910 F. Supp. 2d at 725. The public interests may include:

> "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.*

It is Method's responsibility to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879–80. "The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted," and "unless the balance of convenience of the parties is <u>strongly</u> in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis added); *See also Pragmatus AV, LLC v. Yahoo! Inc.,* No. CIV. 11-902-LPS-CJB, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012) ("It stands to reason that when considering the combined impact of the *Jumara* factors as part of the overall balance of convenience analysis, that balance should have to tip 'strongly in favor of defendant' for transfer to be granted.").

**B.    VENUE IS APPROPRIATE IN DELAWARE**

**i.    ANI's Choice of Forum in Delaware Strongly Weighs Against Transfer**

Venue is proper in this district because Method has advertised its EEMT drug products to pharmacists and insurers in Delaware, and has contracted to make its products available to pharmacists in Delaware through the nation-wide distributor McKesson.   *See* 28 U.S.C. § 1391(b)(2).

Method contends that ANI's choice of forum should not be granted because its "nerve center" or "home turf" and its corporate operations are not located in Delaware, and because

"[t]he parties and this lawsuit bear no meaningful relation to the State." *See* D.I.12 Mot. to Dis. at 15. This is untrue. ANI is a Delaware corporation and ANI's products are legally marketed in Delaware. *See In re ML-LEE Acquisition Fund II, L.P.,* 816 F. Supp. 973, 976 (D. Del. 1993) (holding that even if plaintiff has not selected its home turf, "the plaintiffs choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer").

The "home turf rule is part of the balancing of the convenience factors that takes place after affording the plaintiffs choice of forum the paramount consideration it is due. The court considers whether the chosen forum is also inconvenient to the plaintiff when compared with the plaintiff's 'home turf.'" *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287 (D. Del. 1986). Here, ANI is incorporated in Delaware, and this Court is quite convenient to access from ANI's headquarters in Minnesota via Philadelphia International Airport. See Ex. A at Ex. 5. Therefore ANI, a resident of Delaware, has rational, legitimate reasons for selecting the District of Delaware for its forum. *See Simms v. Thomson Reuters Tax and Accounting, Inc.,* 2011 WL 4501225, at *3 (D. Del. Sept. 28, 2011); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,* 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 200 (D. Del. 1998) ("Of course, all other things being equal, the interests of a plaintiff with 'rational and legitimate' reasons for filing in the District of Delaware will always weigh more heavily in the 'balance of convenience' analysis . . . ").

ii.    **ANI's Choice of Forum Should Prevail Because the Balance of Convenience of the Parties is not Strongly in Favor of Method**

Method contends that the convenience of the parties weighs in favor of transfer because both Defendants reside in Texas, the Northern District of Texas is more convenient for all parties because it is closer to ANI's headquarters in Minnesota than the District of Delaware, "Plaintiff

has substantially greater resources than defendant," Texas is more convenient for non-party witnesses, and Plaintiff's books and records are located outside of Delaware. *See* Dkt. No. 12 at 15-17. Litigating in Texas will not be more convenient for ANI than Delaware because ANI's executives routinely travel to the region encompassing the Northeast Corridor, and ANI selected Delaware as its forum.

Method's declaration concerning its convenience and the location of its operations and witnesses is vague and deficient. It does not allege that a single employee other than its owner Mr. Tucker is actually located in Texas, nor that Method actually conducts any operations in Texas. See Dkt. No. 12-1 ¶5. According to Mr. Tucker, he oversees a team of less than 10 employees. Id. at ¶5. Method appears to operate as virtual company. For instance, a LinkedIn search shows only four employees, Mr. Tucker and his wife in Texas, the "VP of Operations" in Mississippi, and "In-House IP/Litigation Counsel" in Atlanta, Georgia. Ex. A at Ex. 9. It also outsources its operations to other companies.

This Court has previously "decline[d] to elevate a defendant's choice of venue over that of a plaintiff based on defendant's convenience." *FastVDO, LLC v. Paramount Pictures Corp.*, 947 F.Supp.2d 460, 462 (D. Del. 2013). The Third Circuit evaluates convenience of witnesses only by analyzing if a proposed witness "actually may be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Method does not identify any party or nonparty witness that will be unavailable for trial in Delaware, and therefore this factor weighs against transfer. Further, it is a defendant's burden to prove that litigating in the plaintiff's forum of choice "would pose a unique or unusual burden on its operations." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012). Defendant Method is a specialty pharmaceutical company that sells its drug products throughout the United States. As this Court has stated, "the conveniences

of modern travel and communication technology have made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses. Therefore, to meet its burden [Defendants] must establish that litigating this case in Delaware will pose a 'unique or unusual burden' on [their] business operations.'" *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001). They have not done so.

The fact that Defendants reside in Texas does not present a unique or undue burden in litigating this lawsuit in Delaware. As Defendants noted, the Northern District of Texas is home to a large airport hub. *See* Dkt. No.12, Mot. to Dis. at 18. Direct flights from Dallas-Fort Worth International Airport to Philadelphia are regular and affordable. Further, transportation from the Philadelphia International Airport to the District of Delaware is fast, convenient and inexpensive.[7] The fact that Method's books and records are located outside of Delaware is a very minimal impediment to discovery where such data is digital or easily digitized. This Court must apply *Jumara*, which held that the location of books and records is relevant to the transfer analysis only "to the extent that the files could not be produced in the alternative forum" at trial. 55 F.3d at 879; *Helicos Biosciences Corp. v. Illumina, Inc.,* 858 F.Supp.2d 367, 374 (D. Del. 2012)(applying same). Further, this factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor Corp.*, 2001 WL 1617186, at *3 (internal quotation marks and citation omitted).

Moreover, any discovery of Method or its employees may take place in Texas (or the state in which a given Method employee actually resides) regardless of the trial venue. *See e.g.*

---

[7] Google Maps estimates that a drive from the airport to the courthouse would take approximately 25 minutes. *See* Ex. A at Ex. 5.

*CypressSemiconductor Corp.,* 2001 WL 1617186, at *4 (D. Del. 2001) ("[C]onvenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in California regardless of the trial venue.").

As such, the District of Delaware would not place a unique or unusual burden on Defendants' business operations.

### iii.   Method has Failed to Establish that the Public Interest Factors Weigh Strongly in Favor of Transfer

Method contends that the public interests factors weigh in favor of transfer because trial in the Northern District of Texas would be less expensive for the Defendants and would impose no additional burden on Plaintiff, court congestion in the District of Delaware due to vacant District Judgeships, and a lack of local interests weighing against transfer.

Method's arguments that practical considerations weigh in favor of transferring this case are primarily a rehashing of their arguments concerning the convenience of the witnesses.  As noted above, transportation through and from the District of Delaware is convenient, inexpensive, and unburdensome.  Further, as Method notes, the median time for a civil case to reach trial in the District of Delaware was 25.7 months for the period ending June 30, 2017, and 20.1 months in the Northern District of Texas for the same period.  While this factor slightly weighs in Method's favor, it is hardly strong.  Finally, the local interest factor is typically neutral in a case that asserts claims under Federal law as they raise controversies that are more properly viewed as national, not local, in scope.  *Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc.,* 964 F. Supp. 2d 320, 330 (D. Del. 2013).

Taken as a whole, practical considerations do not weigh strongly in favor of transferring this case.

**C.**     **IN THE ALTERNATIVE, THE COURT MUST TRANSFER THIS LAWSUIT TO THE DISTRICT OF MINNESOTA**

If the Court holds that this case should be transferred, ANI respectfully submits that this case be transferred to its "home turf", the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 1404(a).

**i.**     **The Private and Public Interest Factors Weigh in Favor of the District of Minnesota as an Alternate Venue**

The private interest factors weigh in favor of a transfer to the District of Minnesota. ANI's corporate operations are located in Minnesota.

The public interest factors also weigh in favor of a transfer to the District of Minnesota. Fewer resources will need to be expended if this lawsuit proceeds in the District of Minnesota and trial would be more convenient for the parties and witnesses located in Minnesota. The District of Minnesota has twelve active district judgeships, seven senior judges, and nine full-time magistrate judges. [8] Thus the District of Minnesota has the resources to resolve this dispute promptly.

After this District, the District of Minnesota is the forum having the strongest connection to this lawsuit and the parties' dispute should be heard there.

---

[8] *See* Ex. A at Ex.6.

V.   **CONCLUSION**

For the reasons stated above, Plaintiff respectfully asks the Court to deny Defendants'
Motion to Dismiss.

Respectfully submitted,

**BUCHANAN, INGERSOLL & ROONEY, P.C.**

By: */s/ Geoffrey G. Grivner*
    Geoffrey G. Grivner (#4711)
    919 North Market Street, Suite 1500
    Wilmington, DE  19801
    Telephone:  (302) 552-4200
    Facsimile:  (302) 552-4295

    S. Lloyd Smith
    James T. Wilcox
    Alexandre H. Gapihan
    BUCHANAN INGERSOLL & ROONEY P.C
    1737 King Street, Suite 500
    Alexandria, Virginia 22314
    Tel. (703) 836-6620
    Fax (703) 836-2021
    lloyd.smith@bipc.com
    james.wilcox@bipc.com
    alexandre.gapihan@bipc.com

    *Attorneys for Plaintiff,*
    *ANI Pharmaceuticals, Inc.*

Dated:  October 19, 2017